SIBLEY v. McCOY et al.

(Circuit Court of Appeals, Fourth Circuit. July 20, 1917.)

No. 1502

1. ADVERSE POSSESSION ⬤═104—PRESUMPTION—TITLE OUT OF COMMONWEALTH.
    Continuous, open, notorious, visible, peaceable, adverse possession of
    land in Virginia for 20 years by plaintiff in ejectment justifies presump-
    tion that the commonwealth has parted with title.

2. ADVERSE POSSESSION ⬤═31—NOTICE TO OWNER.
    To prove adverse possession, possession must be such as to charge the
    owner with notice, actual or presumptive, that the occupant is claiming
    to hold adversely.

3. ADVERSE POSSESSION ⬤═44, 57—DURATION AND CONTINUITY—EVIDENCE.
    Possession to give title by adverse possession must be continuous and
    uninterrupted for the full statutory period; and this must be clearly es-
    tablished.

4. ADVERSE POSSESSION ⬤═33—NOTICE—UNDISCLOSED CONVERSATION.
    Undisclosed conversation between one going into possession and one
    directing him to do so will not warrant inference that the owner was
    notified that the holding was adverse.

In Error to the District Court of the United States for the Western
District of Virginia, at Roanoke; Henry Clay McDowell, Judge.

Action by Hiram W. Sibley against John C. McCoy and others.
Judgment for defendants, and plaintiff brings error. Reversed, and
remanded for new trial.

W. J. Henson and Robert C. Jackson, both of Roanoke, Va. (M. O.
Litz, of Welch, W. Va., on the brief), for plaintiff in error.

John W. Flannagan, Jr., of Grundy, Va. (Flannagan & Boyd, of
Grundy, Va., on the brief), for defendants in error.

Before PRITCHARD and WOODS, Circuit Judges, and SMITH,
District Judge.

SMITH, District Judge. The plaintiff in error brought an action
of ejectment against the defendants to recover a tract of land in the
county of Buchanan in the state of Virginia. At the trial the jury
under the instruction of the presiding judge returned a verdict in favor
of plaintiff for all the land in dispute, with the exception of a tract
of about 70 acres north of what was called the "King" line, and of
several parcels of cleared land south of that line, the questions as to
which were left to the jury, which as to those lands returned a verdict
for the defendants for the 70 acres north of the King line and one of
the cleared parcels south of that line containing about 25 acres. From
the judgment on this verdict the present writ of error was sued out by
the plaintiff.

The 70-acre tract was part of a tract of 1,235¼ acres the plaintiff
had procured from one N. B. Dotson. Under the testimony this tract
was first shown in the possession of one Abner R. Kerr, who on the
13th of June, 1889, conveyed to N. B. Dotson, who in turn on 20th
July, 1889, conveyed to the plaintiff. The plaintiff offered testimony to
prove actual continued adverse occupation by him, through his ten-

ants and lessees, of the tract of 1,235¼ acres from the date of his purchase on the 2d of July, 1889, to the commencement of the action.

There was produced in evidence a grant to Richard Smith and Henry Banks for 200,000 acres issued 1st of November, 1795, the northern line of which was referred to in the testimony and designated on the map introduced by plaintiff as the "King" line. This line showed as included in the 200,000 acres granted all of the 1,235¼ acres except about 70 acres, which lay north of the King line. The plaintiff introduced several other grants, but none of them covered this 70 acres. The plaintiff relied upon his long-proven possession of the 1,235¼ acres under color of title from the deed to him of the 20th of July, 1889, as justifying the presumption of a grant to all the 1,235¼ acres, including this 70 acres. The defendant introduced in evidence a deed from Archibald Justus to Armeda Justus, dated the 22d of January, 1912, covering 333 acres, which was included within the bounds of the 1,235¼-acre tract. The coal, oil, gases, and all minerals on and underlying this tract of 333 acres were the next day, the 23d of January, 1912, conveyed by Armeda Justus to Polly McCoy and Archibald Justus. The defendants set up the claim of adverse possession as to this tract of 333 acres. The presiding judge instructed the jury:

"That the plaintiff has failed to show that the commonwealth of Virginia has parted with title to that portion of the 333-acre tract north of the King line, and if they should believe from the evidence that the defendants claim title in good faith to that part of said land, they should find as to said part of said tract for the defendants."

The contention of the plaintiff is that he had shown an adverse possession of this 1,235¼ acres for 24 years, viz. from 1889 to 1913, and was entitled to presume from such long-continued possession a grant whereby the title had passed from the commonwealth to all the 1,235¼ acres. The presiding judge had instructed the jury that as to all the uncleared land within the 1,235¼-acre tract lying south of the King line as to which the plaintiff had shown color of title and sufficient adverse occupation the jury should find for the plaintiff; this apparently on the theory that under the Smith and Banks patent of 1795 the commonwealth had parted with the title to some one, although the plaintiff did not connect himself with that patent by any course of paper title. The plaintiff claims that he was entitled to the same instruction as to the 70 acres of the 1,235¼-acre tract lying north of the King line on the theory that a grant to that part of the 1,235¼-acre tract could be inferred from his long continued adverse possession. The only difference with regard to the plaintiff's title under adverse possession with color of title between this 70 acres and the remainder of the 1,235¼ acres is that, although his claim to title from possession was precisely the same over the whole 1,235¼ acres, yet he could not show by any recorded paper instrument any grant from the commonwealth to this 70 acres.

[1] In our opinion, the learned judge below was in error in instructing the jury that the plaintiff had failed to show that the commonwealth had parted with title to this 70 acres part of the 333 acres, and also part of the 1,235¼ acres, which 70 acres lay north of the

King line. Whether or not in Virginia possession for the statutory period is sufficient to justify the presumption of a grant is not necessary to be now determined. We do find that continuous, open, notorious, visible, peaceable, adverse possession of land for a period of 20 years or over will justify the presumption that the commonwealth has parted with the title, and that the instruction that the plaintiff has failed to show that the commonwealth had parted with the title was erroneous in view of the testimony introduced by the plaintiff and which he had the right at least to have submitted to the jury on that point.

South of the King line and within the bounds of the 1,235¼-acre tract were a number of small cleared parcels of land. As to these the presiding judge instructed the jury:

"That if they believe from the evidence that the defendants have been in uninterrupted, continuous, hostile, and actual possession of the cleared lands, indicated on the map as tracts Nos. 1, 2, 3, 4, 5, 6, and 7, claiming to own the same, for a period of ten years prior to the institution of this action, that they should find for defendants, although they may believe from the evidence that the defendants did not have color of title for said tracts."

Under these instructions of the court the jury found for the plaintiff all of the cleared lands except parcel or tract No. 4, containing about 25 acres, and as to this tract judgment was entered for the defendants. This cleared tract of 25 acres is within the bounds of the 1,235¼ acres south of the King line, but without the bounds of the 333-acre tract conveyed by Archibald Justus to Armeda Justus.

The contention of the plaintiff in error is that the learned judge should have instructed the jury peremptorily to find for the plaintiff as to this 25 acres.

Under the testimony the plaintiff claimed title to the entire 1,235¼ acres including therein this 25 acres by continuous, adverse, hostile, peaceable possession under color of title, the color of title being the deeds of conveyance from Abner R. Kerr to N. B. Dotson, dated 13th June, 1889, and from N. B. Dotson to the plaintiff dated the 20th of July, 1889.

From the evidence it appears that Abner R. Kerr was for many years prior to his conveyance to Dotson in possession of this cleared tract of 25 acres. In 1872 (or 1879, according to one witness) Kerr moved off leaving his land in possession of tenants. Archibald Justus was at one time one of his tenants. He was so in 1889, when Kerr came back and surveyed the land prior to his sale to Dotson, and Kerr then called Justus and told him he had sold the land, and that Justus would have to arrange with the new owner. In April, 1890, Archibald Justus leased the land, viz. the 1,235¼ acres from the plaintiff, Sibley, and continued on the property as the tenant of Sibley until June, 1903, when the lease was terminated, and Archibald Justus moved off and seems never to have returned to this 25 acres. A short time after Archibald Justus moved off, his son, Anderson Justus, "some four or five or six days, or maybe a little longer, afterwards, something like that, or maybe two weeks" moved into the house his father had just vacated. He stated:

"My father told me to move back into it. I lived there eight or nine years or some years right along there, after I moved in there. * * * When I took a notion to move to Hurley, and Clel. Jesse, my brother-in-law, wanted to move in, and I told my father about it, and he told me it would be all right to let him move in, and that he would collect the rent off of him. I couldn't tell you how long Clel. lived there, not very long, four, or five, or six months, or something like that."

[2, 3] This is practically the entire testimony to show an adverse occupation of this 25 acres by Archibald Justus after the expiration of his lease in June, 1903. Archibald Justus himself never moved upon or occupied this 25 acres after June, 1903. His claim to title by adverse occupation for ten years after that date is based upon the theory that he occupied through his tenants, his son, Anderson Justus, and his son-in-law, Clel. Jesse. To prove adverse possession, the possession must be such as to charge the owner with notice actual or presumptive that the occupant is claiming to hold adversely. It must also be continuous and uninterrupted for the full statutory period, and this must be clearly established.

[4] There seems no doubt under the testimony that Archibald Justus had been the tenant of the plaintiff. His written lease is an acknowledgment that binds him. In the most favorable aspect to Archibald Justus his lease terminated in June, 1903. If it did not then terminate, it continued under its terms to a later date. There is no testimony sufficient to show that the plaintiff was reasonably notified by any act of Archibald Justus that the plaintiff's former tenant, who had acknowledged his title, immediately upon the termination of his lease took hostile possession of the leased land. The character of the possession of Anderson Justus as the hostile possession of his father rests only upon the statement of Anderson Justus that his father told him to move in the house his father had just vacated. This undisclosed conversation would hardly warrant the inference that Sibley was notified that Archibald Justus was holding adversely.

The length of occupation proved by Anderson Justus is also far from complying with the rule. While the testimony shows, at most, an occupation for nine years and some five or six months, it cannot be construed to justify the inference that there was shown a clear continued occupation for ten years. The instruction prayed by the plaintiff on this point should have been granted. For these reasons it appears that the judgment below must be reversed, and the cause remanded to the court below for a new trial upon the questions brought up to this court by the assignment of error, viz. upon the right of the plaintiff to recover from the defendants the two tracts of 70 acres and 25 acres, respectively, by the verdict of the jury at the trial below, excepted from the land to which the plaintiff was found to be entitled.

Reversed.